```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
```

**CIVIL ACTION NO. 1:09cv484 (WOB)**

**LEONARD EVERETT BROWN**                                **PLAINTIFF**

**VS.**                    **MEMORANDUM OPINION AND ORDER**

**E.I. DU PONT DE NEMOURS
AND COMPANY**                                            **DEFENDANT**

Pursuant to the court's order of August 17, 2010 (Doc. 15), the court hereby issues the following memorandum opinion and order.

### *Factual and Procedural Background*

Plaintiff Leonard Everett Brown ("Brown") began performing work at the "Fort Hill" plant owned and operated by defendant E.I. Du Pont De Nemours and Company ("DuPont") in Hamilton County, Ohio sometime in 1984 or 1985 at the direction of his then employer, Harris Tanks. (Compl. ¶ 6)

In February 1986, the Fort Hill Plant Manager, Emo Mancini, asked Brown if he would be interested in working at the Fort Hill plant permanently, to which Brown responded in the affirmative. (Compl. ¶ 7)  Brown then began working as a welder in the plant's Maintenance Department, where he has worked continuously until the present.  (Compl. ¶ 8)  Also, from 1988 to 1994, Plant Manager Pete Morganthaller told Brown on multiple occasions that he would be "hired" by defendant in the future.  (Compl. ¶ 20)

Brown alleges that, throughout his employment at the Fort Hill plant, DuPont exercised exclusive control over the material aspects of his employment, including setting his schedule, determining his salary, setting his daily work assignments, and setting policies that apply to him. (Compl. ¶ 9) Brown further alleges that, at all times, he has been required to: check in at the beginning of each work day with DuPont's Fort Hill Plant Manager to receive his work assignments; work on his off-days and holidays where emergencies arose; attend defendant's weekly Maintenance Department meetings and safety meetings; and maintain welding certificates at defendant's direction. (Compl. ¶¶ 10-14) Brown also avers that DuPont gave him performance awards similar to those given to other employees. (Compl. ¶ 15)

Since 1986, Brown's pay check has been processed by one of two companies: The Franklin Company and Troy Electric. (Compl. ¶17) Neither company has ever given Brown his work assignments or any instructions relating to work for those companies. (*Id.*)

DuPont has not recognized Brown as its employee and has not given him any employment benefits. (Compl. ¶ 19) It is undisputed that Brown has never been on DuPont's payroll.

On June 23, 2008, Brown sent a written request to defendant seeking confirmation of his eligibility for retirement benefits. (Compl. ¶ 21) On February 13, 2009, defendant informed plaintiff that he was not eligible to participate in the "DuPont Pension

2

and Retirement Plan." (Compl. ¶ 22; Exh. 7 to Plf. Memo. Opp.) The letter further stated that the Summary Plan Description ("SPD") for that Plan provides that only "full-service employees" of DuPont are eligible to participate, and that Brown was not a full-service employee of the company and, therefore, ineligible. (*Id.*)

Brown, through counsel, thereafter filed a Level 2 appeal of that determination. (Compl. ¶ 23)

Not having received a decision on his Level 2 appeal, Brown filed this action against DuPont on July 13, 2009. (Doc. 1) Brown alleges the following causes of action: (1) Violation of ERISA, 29 U.S.C. § 1001 *et seq.*; (2) Breach of Contract; (3) Fraud; (4) Promissory Estoppel; and (5) Accounting. Brown alleges that he is and has been an "employee" of DuPont and that he is, therefore, entitled to participate in its Pension and Retirement Plan. He further alleges that DuPont mischaracterized him as an employee of The Franklin Company and then Troy Electric, thereby denying him pension benefits, health insurance, vacation pay, and sick pay. Brown also alleges that defendant defrauded him by promising to "hire" him, that he was promised that he would be so hired, and that he relied on such representations and has been harmed because DuPont has denied him the benefits of regular employment.

DuPont filed a motion to dismiss on September 28, 2009.

3

(Doc. 5) The court held a hearing on that motion on January 14, 2010. At that time, the defendant's Plan Administrator still had not ruled on plaintiff's Level 2 appeal. The court, therefore, concluded that the administrative record was insufficiently developed, and it ordered that the matter be remanded to the Administrator for a ruling on plaintiff's appeal, and defendant was given leave to renew its motion to dismiss following such ruling. (Doc. 15)

By letter dated April 29, 2010, the DuPont Benefit Appeal Committee informed plaintiff, through his attorney, that it had denied his appeal on the basis that the Plan excludes from coverage "leased" employees. (Doc. 11-1 at 5-7) The Appeal Review document reviewed evidence of the contracts between DuPont and the companies that employed plaintiff, concluding that they were not a sham and that plaintiff had been at all relevant times a leased employee.

Thereafter, DuPont renewed its motion to dismiss, and both parties have incorporated their previous briefs on this issue. The court held further argument on this matter on August 17, 2010, after which it granted defendant's motion to dismiss, noting that a written opinion would follow. (Doc. 15)

4

*Analysis*

**A.   Procedural Posture**

In considering a motion to dismiss in an ERISA case, it is proper for the court to take into account any relevant plan documents, even where they are not attached to the complaint. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). The plaintiff is under no obligation to attach to his complaint documents upon which his action is based, but the defendant may introduce such documents if the plaintiff fails to do so. *Id.* (citations omitted). The court may consider such documents when ruling on a motion to dismiss without converting it to a motion for summary judgment where the plaintiff's claims are based on rights under the documents and their provisions are central to plaintiff's claims. *Id.*

Therefore, this court may consider the benefits plan documents submitted by the parties without converting the motion to dismiss to a motion for summary judgment.

**B.   Employee Retirement Income Security Act ("ERISA")**

    **1.   Standard of Review**

The Supreme Court has held that a denial of ERISA benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

"Plan language giving the administrators the power to interpret the plan and make administrative decisions thereunder and making the administrators' decision on such matters conclusive has been held to warrant use of the arbitrary-and-capricious standard." *Belluardo v. Cox Enter., Inc.*, 157 Fed. App'x 823, 827 (6th Cir. 2005) (citation omitted). *See also Mitzel v. Anthem Life Ins. Co.*, 351 Fed. App'x 74, 78 (6th Cir. 2009) ("When an ERISA plan grants the plan administrator discretionary authority to determine benefit eligibility, the district court must review the plan administrator's decision under the arbitrary-or-capricious standard.") (citation omitted).

As the Sixth Circuit recently reiterated:

> This [arbitrary and capricious] standard is the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. . . . Under this standard, the Court will uphold the administrator's decision if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence. . . . Yet while arbitrary and capricious review is deferential, it is no mere formality, and must consider the quality and quantity of the . . . evidence . . . . While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions.

*Id.* at 79 (citations and internal quotations omitted).

**2.    Application of These Standards To This Case**

The Pension Plan in question here contains language that confers discretion on the Plan Administrator to make eligibility decisions, thereby triggering the arbitrary-and-capricious standard of review. Title I, Section II of the Plan states that "administration of this Plan is vested in the Board of Benefits and Pensions appointed by the Company," and that the Board "retains discretionary authority to determine eligibility for benefits hereunder and to construe the terms and conditions of the Plan."  (Doc. 7-1)  This provision further states that "[t]he decision of the Board in all matters involving the interpretation and application of the Plan shall be final."  *Id.*[1]

Thus, this court will review the underlying benefits decision under the arbitrary-and-capricious standard.  *See Belluardo*, 157 Fed. App'x at 827.

Determining whether an employee is entitled to benefits under ERISA requires a two-prong analysis.  *Jaeger v. Matrix Essentials, Inc.*, 236 F. Supp.2d 815, 821 (N.D. Ohio 2002) (citation omitted).  The first prong requires that the plaintiff

---

[1]Plaintiff argues that, because this language affording the Board discretion is found only in the full Plan and not in the Summary Plan Description ("SPD"), the applicable standard of review is *de novo*.  This argument has been rejected by the Sixth Circuit.  *See Belluardo*, 157 Fed. App'x at 828 (SPD and Plan do not conflict where SPD is silent as to discretion afforded to Plan Administrator; Plan clearly gives Plan Administrator discretion and arbitrary-and-capricious standard applies).

be an "employee." *Id.* at 821-22. The second prong requires that the plaintiff be eligible to receive benefits under the terms of the plan. *Id.*

"Because ERISA only defines an 'employee' as 'any individual employed by an employer,' . . . the Supreme Court directs courts to employ the common-law test for determining whether an individual is an employee." *Id.* (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). This test requires the court to consider thirteen different factors,[2] none determinative, with the overall emphasis being the extent of the employer's ability to control the manner and means by which the worker completes his assigned tasks. *Id.* at 822.

The court finds that, even if Brown were to meet the common-law test for "employee," defendant's decision to deny him benefits was not arbitrary and capricious because plaintiff falls within an exclusion to coverage under the Plan and thus fails under the second prong of this analysis.

---

[2] These factors are (1) the hiring party's right to control the manner and means by which the work product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship of the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party. *Darden*, 503 U.S. at 323-24.

Section IX.A(1)(g) of the Plan states that the term "employee" excludes "individuals who must be treated as employees of the Company for limited purposes under the 'Leased Employee' provisions of the Internal Revenue Code." (Doc. 11-2 at 24)[3] The DuPont Benefit Appeal Committee, after reviewing pertinent documents relating to the service agreements between itself and The Franklin Company and Troy Electric, determined that plaintiff's provision of services to DuPont was as an employee leased from these companies. The Committee further noted that DuPont has consistently so interpreted this provision of its Plan, and plaintiff has not alleged to the contrary.

In making this determination, the Committee also relied on *Clark v. E.I. DuPont de Nemours and Co., Inc.*, No. 95-2845, 1997 WL 6958 (4th Cir. Jan. 9, 1997). That case also involved DuPont, although the benefits at issue were sought under different benefits plans than the one at issue here. Nonetheless, the case is relevant insofar as it also turned on a similar exclusion for "leased" employees. *Id.* at *3. The Fourth Circuit's remarks regarding the scope of ERISA benefits are also pertinent:

> ERISA allows an employer to limit plan coverage to certain employees, as long as said "discrimination" is not based on age or length of service. *See* 29 U.S.C. § 1052(a) . . . . ERISA simply does not require an employer to provide

---

[3] This exclusion goes on to state that "Leased Employee shall mean "an individual, not otherwise an Employee, who pursuant to an agreement between a business entity within the "controlled group" and a leasing organization, has performed, on a substantially full-time basis, for a period of at least 12 months, services under the primary direction or control of the business entity within the Controlled Group."

9

>      benefits to every individual in that company's employment. .
>      . . In short, this court is not in a position to rewrite
>      the Plans at issue here to include additional employees.

*Id.* at *4 (some citations omitted).

As in *Clark*, Brown is ineligible for benefits under the Pension Plan because he falls within the "leased" employee exclusion, and defendant's decision to deny him benefits was not arbitrary and capricious. *See also Jaeger v. Matrix Essentials, Inc.*, 236 F. Supp.2d 815, 825 (N.D. Ohio 2002) (granting motion to dismiss ERISA claim based on "leased" employee exclusion).

In light of the dismissal of plaintiff's sole federal cause of action, the court will decline to exercise its supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3).

Therefore, having reviewed this matter, and being otherwise advised,

**IT IS ORDERED** that: (1) plaintiff's federal claim be, and is hereby, **DISMISSED WITH PREJUDICE**; (2) plaintiff's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE**; and (3) a separate judgment shall enter concurrently herewith.

This 31st day of August, 2010.



Signed By:
William O. Bertelsman  WOB
United States District Judge